CHEHARDY, C.J.
| j Plaintiffs, Jonathan and Brandi Vince, appeal a June 26, 2014 judgment in favor of defendants, Dale Koontz and State Farm Automobile Insurance Company, dismissing the Vinces’ personal injury claims arising out of an automobile accident. For the reasons that follow, we affirm this judgment of the district court.
PROCEDURAL HISTORY
On November 11, 2012, Mr. Vince was driving a pickup truck when he collided with a SUV towing a large boat on U.S. Highway 61 in St. James Parish. The SUV was being driven by Mr. Koontz.
On January 4, 2013, Mr. Vince and his wife, Brandi Vince, filed suit seeking damages for their injuries sustained as a result *451 of Mr. Koontz’s negligence.[1] Mr. Koontz’s insurer, State Farm Automobile Insurance Company (“State Farm”), answered this petition, denying the Vinces’ allegations and averring that the accident was caused by the sole and exclusive negligence of Mr. Vince, or, alternatively, that Mr. Vince’s negligence contributed to the accident. Mr. Koontz filed a reconventional demand, likewise alleging that the accident was caused solely by the negligence of Mr. Vince and seeking damages for his injuries.
On the merits of the Vinces’ claims against defendants, the matter proceeded to a jury trial on June 4 and 5, 2014. The parties stipulated that Mr. Koontz’s recon-ventional claims would be tried by the judge, but that the jury’s determination regarding Mr. Vince’s liability would be controlling in Mr. Koontz’s reconventional demand, with the judge only assessing Mr. Koontz’s damages should the jury find Mr. Vince liable. The jury returned a verdict in favor of Mr. Koontz. According to the verdict form, the jury determined that Mr. Koontz was negligent, but that his negligence was not the proximate cause of the accident. Following the instructions on the verdict form, the jury did not address any 12remaining issues, including the issues regarding Mr. Vince’s negligence, or any allocation of fault between Mr. Vince and Mr. Koontz.
On June 26, 2014, in accordance with the jury’s verdict, the district court entered a judgment dismissing the Vinces’ claims in the main demand with prejudice and at their costs.[2] The court deferred ruling on Mr. Koontz’s reconventional demand until such time as the parties submitted a motion pertaining to a proposed judgment.
On July 7, 2014, the Vinces filed a motion for judgment notwithstanding the verdict (“JNOV”) and/or a motion for new trial in which they argued that the verdict form on which Mr. Koontz was found to be negligent, but not a proximate cause of the accident, was a mistake of law. On August 14, 2014, the district court denied the JNOV motion, but granted the Vinces’ motion for new trial. In its written reasons for judgment, the court found that the jury was confused regarding causation and that the jury instructions were improperly structured in a way that precluded the jury from reaching the issue of liability of Mr. Vince, which, in turn, precluded the court from rendering a verdict on the re-conventional demand in accordance with the stipulation of the parties.
Mr. Koontz sought supervisory review of this ruling. On November 20, 2014, this Court granted relief, finding “nothing unduly confusing about either the jury instructions or the jury verdict form.” Vince v. Koontz, 14-709 (La. App. 5 Cir. 11/20/14) (unpublished writ disposition), writ denied, 14-2682 (La. 3/27/16), 162 So.3d 384. This Court vacated the judgment granting a new trial, reinstating the June 26, 2014 judgment. Id. On April 10, 2015, the Vinces appealed that judgment.
On December 9, 2015, this Court dismissed that appeal for lack of jurisdiction. See Vince v. Koontz, 15-301 (La.App. 5 Cir. 12/9/15), 182 So.3d 333. We found the June 26, 2014 judgment was not final because it addressed the Vinces’ claims in the main demand, but did not resolve Mr. Koontz’s claims in reconvention. Id. at 335. Because this partial judgment had not been designated final in accordance with La. C.C.P. Art. 1915(B), we were without jurisdiction to consider the appeal pursu *452 ant to La. C.C.P. Art. 1911(B). Id. We remanded the matter for the district court to either issue a judgment on the recon-ventional demand or designate the June 26, 2014 partial judgment as a final judgment for the purpose of an immediate appeal pursuant to La. C.C.P. Art. 1915(B). Id. at 335-36.
On remand, pursuant to a joint motion by the parties to designate the judgment as final, the district court issued an order on June 27, 2016 designating the June 26, 2014 judgment as a final judgment in accordance with La. C.C.P. Art. 1915(B). The Vinces now come back before this Court in this second appeal.
FACTS
In November of 2012, Mr. Vince was employed as an operator at the Noranda Alumina plant in Gramercy in St. James Parish. With his wife Brandi, Mr. Vince resided in nearby Prairieville in Ascension Parish. In his daily commute to and from work, Mr. Vince traveled along U.S. Highway 61 (a/k/a “Airline Highway”), a four-lane divided highway. Located along this stretch of highway is the St. James Boat Club, which maintains a boat launch that provides water access at the confluence of Conway Bayou and the Blind River. The club is located on the northbound side of Airline and is accessed by a small road that intersects the highway. For traffic leaving the boat club, this intersection is controlled by a stop sign. When approaching the boat club from the south, just before the club, Airline Highway passes over the Blind River via a short bridge. Mr. Vince explained that law enforcement often sets up speed traps around this location, where the speed limit is 65 miles per hour. So he routinely slows down to at least the speed limit every time he passes over the bridge just before reaching the boat club.
LAround 4:45 p.m. on November 11, 2012, a Sunday, Mr. Vince had completed his shift at the plant and was heading home in his 2002 white Dodge Ram pickup truck. He did not have his seatbelt on. While proceeding northbound in the left lane on Airline, he approached the bridge just before the boat club, so he slowed down to the speed limit. As he did, he observed a GMC Yukon XL Denali towing a large boat leaving the boat club. The vehicle was stopped at the stop sign waiting to merge on to Airline Highway. As Mr. Vince started to pass over the bridge, he glanced down at his cell phone to check a fantasy football score. When he glanced back up, he was three-quarters of the way across the bridge and noticed that the Denali had pulled out onto the highway, blocking both northbound lanes. He estimated that he was 30 or 40 yards from the Denali when he noticed it in his path. Mr. Vince quickly determined he could not safely avoid the truck and boat: to the left was oncoming southbound traffic and to the right was water. So he slammed on his brakes.
On November 11, 2012, Mr. Koontz, his cousin, and his two children spent the day on the water in Mr. Koontz’s new 27-foot cabin cruiser that he had purchased earlier that summer to replace his 17-foot fishing boat. This was Mr. Koontz’s first time using his new boat at the St. James boat launch. Mr. Koontz and his family put in at the St. James Boat Club launch around 10:00 a.m. They returned to the boat launch around 3:45 p.m., loaded the boat onto the trailer, and departed.
Upon leaving the boat club, Mr. Koontz, who was driving, came to a stop at the stop sign at the intersection with the northbound lanes of Airline Highway. He was stopped there several minutes, waiting for a clearing in the traffic. He intended to cross the northbound lanes, cross the me *453 dian, and make a left turn onto the southbound side of the highway. After waiting several minutes, he noticed a clearing in the southbound traffic to his right, looked to his left and saw a vehicle |fiapproaching him on the northbound side. It was at such a distance that Mr. Koontz could only make out that the vehicle was white. He could not determine whether it was a truck or a car, how fast it was going, what lane it was in, or whether its headlights were on. It was “all the way down as far as the eye could see” and had not yet reached the bridge. He then looked back to his right, did not see any traffic, and proceeded to cross the highway without looking back to his left. Despite admitting that he did not look back to his left, Mr. Koontz maintains that there was no vehicle on the bridge when he started to cross the highway. He proceeded slowly at first to ensure the boat and trailer were level before he began gradually accelerating.
Mr. Koontz’s Denali had cleared the northbound lanes and he was just beginning to make the left turn out of the gap in the median onto the southbound side of the highway when he felt the back of his truck jerk. Mr. Vince had collided with Mr. Koontz’s boat. The airbags in Mr. Vince’s vehicle did not deploy and he briefly lost consciousness. He was transported by ambulance to St. Elizabeth’s Hospital in Gonzales.
Thereafter, Sergeant Thomas Wild of the Louisiana State Police, a crash investigator and crash reconstructionist, arrived on the scene around 5:30 p.m. Sgt. Wild observed that Mr. Vince’s vehicle was in the left lane at the point of impact. The marks on the roadway indicated that the two vehicles moved approximately ten feet after impact and that the rearmost tires of the trailer were in the right lane of the northbound side at the moment of collision. Sgt. Wild further observed that Mr. Vince’s vehicle had “dipped down and went under the boat,” indicating that Mr. Vince was braking at the time of the collision. Sgt. Wild found most of the damage to Mr. Vince’s vehicle was not structural, but was “just some very light sheet metal, the hood, the fenders.” Based on these observations, Sgt. Wild |(jestimated that, at the moment of impact, Mr. Vince’s vehicle was travelling “probably less than 25 miles per hour.”
Sgt. Wild interviewed Mr. Vince at the hospital, who stated that he was traveling between 65 and 70 miles per her hour before the accident. Sgt. Wild also interviewed Travis Cerny, a witness who stated that he observed Mr. Vince traveling at a high speed just before the accident, approximating it around 95 miles per hour. Sgt. Wild testified that he found no physical evidence suggesting that Mr. Vince was traveling at such a high rate of speed.
At trial, Mr. Cerny explained that on the day of the accident he was traveling northbound in the left lane of Airline Highway. He was going approximately 70-75 miles per hour as he approached the bridge just before the St. James Boat Club, when he glanced in his rearview mirror to see a white pickup truck “flying up” behind him in the left lane. Mr. Cerny moved to the right lane and the truck “blew by [Mr. Cerny] like [he] was standing still.” A few moments later, Mr. Cerny came upon the accident scene.
Both parties retained their respective accident reconstruction experts, who reached different conclusions regarding the cause of the accident. Based on his calculations, Wayne Winkler, plaintiffs expert, opined that Mr. Vince did not have enough time and distance to avoid striking Mr, Koontz. He determined that if Mr. Koontz had not entered the highway when he did, the accident would not have occurred and, therefore, Mr. Koontz’s enter *454 ing the highway when he did was the cause of the accident.
On the other hand, based on the calculations of defendant’s expert, Charles Prew-itt, he opined that Mr. Vince had enough time to react and come to a complete stop before striking Mr. Koontz. Mr. Prewitt therefore concluded that the accident was caused by Mr. Vince’s distraction and/or excessive speed,
JjDISCUSSION
In the Vinces’ sole assignment of error on appeal, they argue that the jury manifestly erred in finding that Mr. Koontz’s negligent failure to yield the right of way was not a proximate cause of the accident. They request that this Court reverse this finding and calculate an award of damages for Mr. Vince.
The jury returned its verdict on a form that presented a sequence of yes-or-no questions, with instructions to proceed to a subsequent question based on the answer to the previous one. It provided:
(1) Was Dale Koontz negligent? If the answer to question 1 is “yes,” proceed to question 2. If the answer to question 1 is “no,” sign and date the verdict form and return form to bailiff.
(2) Was the negligence of Dale Koontz a proximate cause of the accident? If the answer to question 2 is “yes,” proceed to question 3. If the answer to question 2 is “no,” sign and date the verdict form and return form to bailiff,
(3) Was Jonathan Vince negligent? If the answer to question 3 is “yes,” proceed to question 4. If the answer to question 3 is “no,” proceed to question 5.
(4) Was the negligence of Jonathan Vince a proximate cause of the accident? If the answer to question 3 is “yes,” proceed to question 5. If the answer to question 4 is “no,” proceed to question 6.
(5) Please state the percentage of negligence, if any, attributable to Dale Koontz and Jonathan Vince. The total of your percentage must be 100%. Proceed to question 6.
(6) Did Jonathan Vince suffer and damage as a result of the automobile accident on November 11, 2012? If the answer to question 6 is “yes,” proceed to question 7. If the - answer to question 6 is “no,” sign and date the verdict form and return form to bailiff.
(7) Without deducting any sums for the percentage of negligence, if any, which you have assigned above to Jonathan Vince, please state what sum of money, if any, would reasonably and fairly compensate Jonathan Vince... .[3]
IsDuring deliberations, the jury requested a definition for “proximate cause,” a term that appears in questions two and four of the verdict form. Without objection from the parties, the court provided the following definition: “Proximate cause means the primary act which produces the accident. This does not mean there could be only one proximate cause. Many things or the conduct of two or more persons may operate at the same time to cause the accident.”
*455 After further deliberation, the jury unanimously answered “Yes” to question one, “No” to question two, and did not answer any remaining questions. Based on this, the district court entered a judgment in favor of Mr. Koontz, dismissing with prejudice the Vinces’ claims in the main demand. On appeal, the Vinces contend that the jury’s answer to question two is manifestly erroneous because a “finding of negligence mandates a finding of proximate causation under the facts of this case.”
To succeed on a claim of negligence, the plaintiff must prove five elements: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant’s conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) proof that the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the proximate cause/legal cause/scope of liability/scope of protection/scope of duty element); and (5) proof of actual damages (the damages element). See Rando v. Anco Insulations Inc., 08-1163 (La. 5/22/09), 16 So.3d 1065, 1086.
In finding Mr. Koontz negligent here, the jury evidently determined the first two elements had been met. And in finding Mr. Koontz’s negligence was not the “proximate cause” of the accident, it would seem the jury determined the fourth element had not been satisfied. We find, however, that the definition of | ¡/‘proximate cause” provided to the jury was actually the definition for the third element, cause-in-fact.
This is not surprising. “Proximate cause” has long been a nebulous concept in Louisiana jurisprudence. In 1962, the Louisiana Supreme Court observed: “As employed by courts, proximate cause is a legal concept without fixed content. It is used indiscriminately to refer to cause-in-fact, the scope of liability, and other negligence factors.” Dixie Drive It Yourself Sys. New Orleans Co. v. Am. Beverage Co., 242 La. 471, 137 So.2d 298, 307 (1962). Proximate cause and cause-in-fact, however, are separate and distinct concepts.
Proximate cause is a question of law that is informed by both factual and policy considerations. See Rando, supra at 1088; Roberts v. Benoit, 605 So.2d 1032, 1044-46 (La. 1991). The proximate cause inquiry asks “whether the enunciated rule or principle of law extends to or is intended to protect this plaintiff from this type of harm arising in this manner.” Rando, supra. The Louisiana Supreme Court has explained:
Since the law never gives absolute protection to any interest, recovery will be allowed only if the rule of law on which plaintiff relies includes within its limits protection against the particular risk that plaintiffs interests encountered. This determination of the particular risks to plaintiff that fall within the ambit of protection of the rule of law on tvhich plaintiff relies is the determination of the issue of proximate cause.
Dixie, supra at 305 (quoting Jesse D. McDonald, Proximate Cause in Louisiana, 16 La. L. Rev. 391, 396 (1956)) (Emphasis original).
Cause-in-fact, on the other hand, is a question of fact. See Rando, supra at 1087. The Louisiana Supreme Court has explained:
Cause-in-fact is generally a “but for” inquiry; if the plaintiff probably would have not sustained the injuries but for the defendant’s substandard conduct, such conduct is a cause-in-fact. Stated differently, the inquiry is “did the defendant contribute to the plaintiffs harm or *456 is the defendant a cause of the plaintiffs harm?”
An alternative method for determining cause-in-fact, which is generally used when multiple causes are present, is the “substantial | infactor” test. Under this test, cause-in-fact is found to exist when the defendant’s conduct was a “substantial factor” in bringing about plaintiffs harm. Under either method, it is irrelevant in determining cause-in-fact whether the defendant’s actions were “lawful, unlawful, intentional, unintentional, negligent or non-negligent.” Rather, the cause-in-fact inquiry is a neutral one, free of the entanglements of policy considerations—morality, culpability or responsibility-involved in the duty-risk analysis.
Roberts, supra at 1042 (citations omitted).
Here, the jury was informed “proximate cause” is “the primary act which produces the accident.”[4] After consideration of the foregoing, we find this definition describes the cause-in-fact element. Accordingly, when the jury found Mr. Koontz’s negligence was not the “proximate cause” of the accident, it appears the jury actually determined that Mr. Koontz’s negligence was not the cause-in-fact of the accident.
This has drawn our attention to the jury instructions, which reflect that the jury was not instructed on the full scope of the law governing a cause of action in negligence.[5] The instructions omit the element of proximate cause as defined above.
In two separate sections, the jury instructions state that Mr. Vince’s cause of action is comprised of three elements:
Whether the defendant has engaged in sub-standard conduct is only one of the elements of plaintiffs case, in order to be successful, the plaintiff must establish all the essential elements of his case. The other elements are the following: (1) That the injury which the plaintiff suffered in this case was in fact caused by the conduct of the defendant; and (2) That there was actual damage to the plaintiffis)’ person.
Jll* * *
The plaintiff has the burden of proving the following elements by a preponderance of the evidence. He must demonstrate: (1) that the injury which he says he suffered was, in fact, caused by the conduct of the defendant; (2) that the conduct of the defendant was below the standards which I have told you are applicable to the defendant’s conduct; and (3) that there was actual damage to the plaintiffs person or his property.
On the contrary, as noted above, to succeed on a claim of negligence, the plaintiff must prove five elements. See Raudo, supra at 1086. Though the duty and breach *457 elements (elements one and two) seem to have been subsumed into the substandard conduct element in these jury instructions, an instruction on proximate cause is notably absent. Instead, these instructions specify that the plaintiff must only prove cause-in-fact.
Trial courts are given broad discretion in formulating jury instructions. Adams v. Rhodia, Inc., 07-2110 (La. 5/21/08), 988 So.2d 798, 804. An appellate court must exercise great restraint before it reverses a jury verdict because of erroneous jury instructions. Id. But when a jury is erroneously instructed and the error probably contributed to the verdict, an appellate court must set aside the verdict. Id. In the assessment of an alleged erroneous jury instruction, it is the duty of the reviewing court to assess such impropriety in light of the entire jury charge to determine if the instructions adequately provide the correct principles of law as applied to the issues framed in the pleadings and the evidence and whether the instructions adequately guided the jury in its deliberation. Id. Ultimately, the determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice. Id.
Here, though the jury should have been instructed on the element of proximate cause, see Chatman v. S. Univ. at New Orleans, 15-1179 (La. App. 4 Cir. 7/6/16), 197 So.3d 366, 375 (affirming the trial court’s instructing the jury on |12the element of proximate cause in a negligence action),[6] we cannot say that this omission prevented the jury from dispensing justice. The jury was properly instructed on the cause-in-fact element—albeit under the title “proximate cause”—and determined that Mr. Koontz’s negligence was not the cause-in-fact of the accident. In our opinion, instructing the jury on the additional element of proximate cause would not affect that strictly factual determination.
Having clarified that in answering “No” to question two on the verdict form, the jury actually found Mr. Koontz’s negligence was not the cause-in-fact of the accident, we now address the Vinces’ argument that this finding was manifestly erroneous. The Vinces argue that the jury manifestly erred in this finding because a finding of negligence mandates a finding of causation in this case. We reject this argument because: one, it ignores the fact that a negligence claim is compi’ised of five separate elements; and two, it ignores the prospect that the causal connection between a plaintiffs injuries and a defendant’s negligence may be severed by intervening and superseding causes. As explained by the Louisiana Supreme court:
An intervening cause is one which comes into play after the defendant’s negligent conduct has ceased, but before the plaintiff suffers injury. In situations in which there is an intervening force that comes into play to produce the plaintiffs injury (or more than one cause of an accident), it has generally been held that the initial tortfeasor will not be relieved of the consequences of his or her negligence unless the intervening cause superceded [sic] the original negligence and alone produced the injury. If the original tort-feasor could or should have reasonably foreseen that the accident might occur, he or she will be liable notwithstanding the intervening cause. In sum, foreseeable intervening forces are within the scope of the original risk, and hence of the original tortfeasor’s negligence.
Adams, supra at 808 (citations omitted).
As a matter of law, we conclude that a finding of negligence does not neces- *458 sítate a finding of causation. Therefore, the jury’s finding Mr. Koontz | ^negligent does not per se render erroneous its determination that he did not cause the accident. And while we see no legal error with the jury’s finding of no causation, before we can conclude that it was not erroneous, we must still evaluate this factual finding under the manifest error-clearly wrong standard of review.
Causation, as a question of fact, is subject to the manifest error-clearly wrong standard of review. See Rando, supra at 1087. On appeal, we will not set aside a finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” See id. at 1087-88. This standard of review is based upon recognition of the trier-of-fact’s better capacity to evaluate live witnesses, as compared with the appellate court’s access only to a cold record, as well as the proper allocation of trial and appellate functions between the respective courts. Prejeant v. Gray Ins. Co., 15-87 (La. App. 5 Cir. 09/23/15), 176 So.3d 704, 708-09. Therefore, where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Id. at 709. Where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, DOTD, 617 So.2d 880, 883 (La. 1993).
In order to reverse a trial court’s factual findings, the appellate court must: (1) find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) determine that the record establishes the finding is clearly wrong or manifestly erroneous. Prejeant, supra.
In -the present case, both plaintiff and defendant offered their versions of events, which each supported with testimony from them respective experts. Plaintiffs expert, Mr. Winkler, presented to the jury his method and calculations for his conclusion that Mr. Vince did not have enough time to stop before the collision, while defendant’s expert, Mr. Prewitt, presented to the jury his method 1 uand calculations for the opposite conclusion that Mr. Vince did. From this conflicting testimony, the jury was free to accept one version and reject the other. In finding Mr. Koontz did not cause the accident, the jury evidently accepted Mr. Koontz’s version and rejected Mr. Vince’s. Upon review of the testimony and evidence presented at trial, we conclude that the record contains a reasonable factual basis for this finding and does not establish that it is clearly wrong.
This assignment of error is without merit. We decline Mr. Vince’s request for an award of damages.
DECREE
For the foregoing reasons, we affirm the district court’s June 26, 2014 judgment.
AFFIRMED

. Mrs. Vince raised a loss of consortium claim.

. As part of the June 26, 2014 judgment, the district court dismissed Mrs. Vince’s claim at her request, with prejudice and at her cost.

. The jury was prompted to assign dollar amounts for the following categories: past physical pain and suffering, future physical pain and suffering, past mental anguish and distress, future mental anguish and distress, past loss of enjoyment of life, future loss of enjoyment of life, permanent scarring, past lost wages, past medical expenses, future medical expenses, and property damage.

. It is noted that in support of the contention that this definition of "proximate cause" is not wrong, Mr. Koontz and State Farm, in their memorandum in opposition to the Vinces’ motion for JNOV/new trial, cite Harvey v. Great Am. Indem. Co., 110 So.2d 595 (La. App. 2 Cir. 1958), in which the Second Circuit stated:
The proximate cause of an injury is the primary or moving cause, or that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the accident could not have happened, if the injury be one which might be reasonably anticipated or foreseen as a natural consequence of the wrongful act.

. We realize that neither party objected to the jury instructions, nor was this issue raised on appeal, However, the Louisiana Supreme Court has held that when the jury instructions contain a “plain and fundamental” error, the contemporaneous objection requirement is relaxed and appellate review is not prohibited. Wegener v. Lafayette Ins. Co., 10-810 (La. 3/15/11), 60 So.3d 1220, 1230 n.10,

. It is noted that the Fourth Circuit in Chat-man employs the term “legal cause” to refer to the concept this opinion refers to as “proximate cause.”